IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLOS LINDSEY,

                Plaintiff,

v.

JOHNSTON, PRIMMER, FEDIE, YANSKI,
FISCHER, and CAPT. PRIMMER,

                Defendants.

OPINION and ORDER

18-cv-398-jdp[1]

---

Plaintiff Carlos Lindsey is an inmate at the Wisconsin Secure Program Facility (WSPF). He is an experienced pro se litigator with several cases pending in this court, and as a jailhouse lawyer he has been assisting another inmate with his case. *Wells v. Govier*, No. 18-cv-693.

Lindsey has a constitutional right to court access, and he has the right to assist other inmates with their cases. But Lindsey has abused those rights by filing false and unauthorized documents in the *Wells* case. And this is not his first such offense: he filed a false affidavit in a case in the Eastern District of Wisconsin, prompting Judge Griesbach to dismiss that case with prejudice as a sanction. *Lindsey v. Hoem*, No. 16-cv-43, Dkt. 47 (E.D. Wis. Sept. 7, 2016).

After Lindsey's potential misconduct in the *Wells* case came to my attention, I held an evidentiary hearing to determine whether Lindsey had filed false or unauthorized documents. After hearing the parties' testimony and receiving the parties' evidence, I find that (1) Lindsey signed and filed Wells's complaint in the '693 case without Well's authorization; and (2)

---

[1] I have provided the caption for only the '398 case. The clerk of court is directed to also docket this order in Case Nos. 17-cv-623, 18-cv-397, and 18-cv-399.

Lindsey forged a letter from Wells asking me to dismiss the '693 case. I also find that Lindsey's testimony at the evidentiary hearing was knowingly false.

Lindsey has engaged in serious, intentional misconduct that threatens the integrity of the judicial process. The previous sanction of having a case dismissed did not deter his deceitful conduct. A more severe sanction is warranted: all of his cases pending in this district will be dismissed with prejudice. I will also impose a filing bar. Lindsey may not file any new lawsuit in this court, except for habeas corpus petitions and complaints in which he alleges that he is in imminent danger of serious physical harm.

I will grant defendants' motion to seal the hearing exhibits, Dkt. 35, and I will direct the clerk of court to seal the transcript of the hearing. Although documents that influence or underpin a judicial decision are normally open to public inspection, proceedings may be closed to protect the safety of witnesses. *See United States v. Foster,* 564 F.3d 852, 853–54 (7th Cir. 2009).

FINDINGS OF FACT

I have considered the evidence submitted at the hearing, Dkts. 36–44; the testimony of Lindsey, Wells, and two additional witnesses from WSPF; and other documents filed in Wells's case, no. 18-cv-693, and in Lindsey's various cases. From that evidence, I find the following facts.

**A. Unauthorized filing: Wells's complaint in Case No. 18-cv-693**

Theraron Wells is an inmate at WSPF. Wells asked a fellow inmate, Tyrone Ards, to prepare a complaint alleging that WSPF staff had allowed Wells to attempt suicide. When Ards was released from prison, Wells turned to Lindsey and asked Lindsey to prepare the complaint.

2

Lindsey wrote the complaint, as Wells requested, but Lindsey also signed and filed it. Lindsey testified that he had Wells's permission to sign and file the complaint. But Wells testified that he did *not* give Lindsey permission to sign or file the complaint. According to Wells, Lindsey said that he was afraid that Wells would not follow through and actually file the complaint, so Lindsey took it upon himself to sign and file the complaint.

Wells was not aware that Lindsey filed the complaint until Wells received a docket sheet from the court. After asking other jailhouse lawyers to review the already-filed complaint, he decided that it was well-written and an accurate representation of the facts of his case. Dkt. 43 (transcript of telephone hearing in '693 case), at 5–6. So Wells authorized the complaint "after the fact" and decided to proceed with the case.

I find Wells's testimony to be credible; Lindsey's is not. I find that Lindsey signed and filed the complaint in case no. 18-cv-693 without Wells's authorization. And even if Wells had authorized the filing of the complaint, it was not appropriate for Lindsey to sign it in Wells's name. Ultimately, Wells endorsed the lawsuit, but Lindsey, not Wells, made the decision to file it.

**B. Forgery: Letter requesting dismissal of Wells's case**

On September 19, 2018, I received an unusual letter from Wells: he warned me that WSPF's electronic filing system was insecure, and that I should disregard any electronic filing asking me to dismiss the '693 case. Dkt. 12 ('693 case). Wells asked me to make sure than any filing from him had his "patented signature" as on the September 19 letter. Two days later, on September 21, I received a letter purporting to be from Wells and asking me to dismiss the '693 case. Dkt. 37. The letter did not have Wells's patented signature. But the handwriting on the September 21 letter looked similar to the handwriting on Wells's complaint, which is also

similar to the handwriting on Lindsey's own pleadings. See, e.g., *Lindsey v. Johnston*, No. 18-cv-398, Dkt. 1 (W.D. Wis. Mar. 2, 2018); *Lindsey v. Asch*, No. 18-cv-399, Dkt. 1 (W.D. Wis. Dec. 12, 2017).

I held a telephone hearing in the '693 case with Wells and defense counsel from the DOJ. Wells assured me that he did not write the letter. Dkt. 43. Wells said that he knew who did, but he did not want to tell me. *Id.* at 8. At the evidentiary hearing, Wells was again reluctant to state expressly that Lindsey had filed the letter, but there is ample evidence that Lindsey did.

First, the handwriting in the letter itself matches Lindsey's handwriting, which is quite distinctive among inmate litigators. *Compare* Dkts. 37 and 44. Lindsey suggested that another inmate may have imitated his handwriting to get him in trouble, but that is complete speculation on Lindsey's part, and he has no evidence to support it.

Second, the DOJ introduced a copy of the e-filing receipt for the September 21 letter. Dkt. 39. Lindsey acknowledged that the handwriting was his, but he said that he could not remember what document the receipt was for. When the DOJ said that it was the receipt for the September 21 letter, Lindsey changed his testimony and said that it was not his receipt.

Third, Lindsey had a motive for filing the September 21 letter. Lindsey and Wells have had numerous arguments, including a recent physical confrontation. Although the two were on speaking terms when the letter was filed, they had had disagreements about how to handle Wells's lawsuit, and Wells was getting conflicting advice from Oscar Garner, another jailhouse lawyer, who was transferred from WSPF in June 2018.

Fourth, evidence presented by the DOJ suggests that Lindsey filed a disbursement request in Wells's name to apply money from Wells's account to the phone account for

Lindsey's sister, Patricia Moore. Dkt. 38, at 12–13. The request is dated September 16, 2018, and it's written in Lindsey's handwriting. The signature is not Wells's patented signature, and Wells says that he did not file it himself. Prison officials issued a major conduct report to Lindsey for the disbursement request, but the hearing officer decided that there was not enough evidence to find Lindsey guilty. Dkt. 38, at 3–4. I disagree. The reason that the hearing officer gave for finding Lindsey not guilty was that Wells also knew Moore. Call records show that Wells did not call Moore after the funds were disbursed. Dkt. 42. But Lindsey did, and he continued to call Moore, using Wells's money, even after the disciplinary hearing. I find that the evidence that Lindsey filed a falsified disbursement request is quite compelling.

At the evidentiary hearing, Lindsey pointed out minor ways that the September 21 letter differs from his other filings. Lindsey is correct that the signature on the September 21 letter looks more like Wells's signature than the other signatures that Lindsay has used. But the signature on the September 21 letter looks a little too studied and deliberate to be Wells's real signature. Lindsey also contends that he always starts his letters with some variation of the phrase, "I thank you in advance for receiving this letter," *see, e.g.*, Dkt. 22 and Dkt. 38, and that the September 21 letter does not include that phrase. Dkt. 37. But I have received other letters from Lindsey that also do not include that phrase. *See, e.g.*, *Lindsey v. Wallace*, No. 16-cv-743, Dkt. 53 (W.D. Wis. Apr. 12, 2018). And even if Lindsey did always use this phrase in his own correspondence, it would make sense to leave the phrase out when Lindsey was writing a fake letter for someone else.

I find that Lindsey wrote and filed the September 21 letter without Wells' knowledge or authorization.

ANALYSIS

"A district court has inherent power to sanction a party who 'has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (*quoting Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009). In imposing a sanction as severe as dismissal of a case, I must find that Lindsey has committed misconduct by a preponderance of the evidence. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778–81 (7th Cir. 2016), *cert. denied*, 138 S. Ct. 116 (2017). The evidence here is well beyond a preponderance that Lindsey signed and filed the Wells complaint without authorization. The evidence is also clear and convincing that Lindsey committed even more serious misconduct when he filed the September 21 letter without Wells's knowledge or authorization and forged his signature in the process.

The right of access to the federal courts is not absolute, and an individual's access to the courts can be limited to address misconduct. *In re Chapman*, 328 F.3d 903, 905 (7th Cir. 2003) (citing *United States ex rel. Verdone v. Circuit Court for Taylor County*, 73 F.3d 669, 674 (7th Cir. 1995)). "Courts have ample authority to curb abusive filing practices by imposing a range of restrictions." *Chapman v. Exec. Comm. of U.S. Dist. Court for N. Dist. of Illinois*, 324 F. App'x 500, 502 (7th Cir. 2009) (collecting cases).

Lindsey has demonstrated a sustained pattern of dishonesty before the court, and I conclude that for Lindsey's conduct an appropriate sanction is to dismiss all his pending cases and implement a filing bar. I have considered lesser sanctions, but I conclude that none would be effective. *See Rivera v. Drake*, 767 F.3d 685, 687 (7th Cir. 2014). Lindsey proceeds *in forma pauperis*, so no monetary sanction would work. *See id*. Dismissing Lindsey's pending cases is unlikely to prevent future misconduct. He already received that sanction in another case,

*Lindsey v. Hoem*, No. 16-cv-43, Dkt. 47 (E.D. Wis. Sept. 7, 2016), when he falsified a declaration, but that did not stop him from committing the misconduct at issue here. I must protect the court, and other parties, from Lindsey's willful dishonesty.

When necessary, federal courts have the power to impose a filing bar to restrict a plaintiff's ability to file new lawsuits. *See In re LFG*, 104 F. App'x 571, 574 (7th Cir. 2004) (filing bar for party who made unauthorized filings in another person's case); *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995) (filing bar for pro se party who continued to file false evidence and did not respond to monetary sanctions). A filing bar must be tailored to the misconduct. *Henry v. United States*, 360 F. App'x 654, 656 (7th Cir. 2010) (citations omitted). It would be appropriate to treat Lindsey similar to a three-striker under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g). Under § 1915(g), a prisoner who has had three cases dismissed on the grounds that they were frivolous, malicious, or failed to state claim, is barred from filing *in forma pauperis* unless the prisoner faces imminent danger of serious physical injury. Lindsey has submitted false documents on at least three occasions, and this misconduct is far worse than an inmate who has filed three lawsuits that were dismissed for failure to state a claim.

From here on, the only new cases that Lindsey may file are habeas corpus petitions and complaints in which he alleges that he is in imminent danger of serious physical harm. To meet the imminent-danger requirement, he will need to allege a physical injury that is imminent or occurring at the time the complaint is filed and show that the threat or prison condition causing the physical injury is "real and proximate." *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Heimermann v. Litscher*, 337 F.3d 781 (7th Cir. 2003); *Lewis v. Sullivan*, 279 F.3d

526, 529 (7th Cir. 2002)). Any complaint that does not meet these standards will be summarily dismissed.

ORDER

IT IS ORDERED that:

1. All of plaintiff Carlos Lindsey's pending cases are DISMISSED with prejudice for Lindsey's misconduct. The clerk of court is directed to enter judgment for defendants and close the following cases:

    - 17-cv-623
    - 18-cv-397
    - 18-cv-398
    - 18-cv-399

2. Any pending motions in the above cases are DENIED as moot.

3. Lindsey is barred from filing any future case-initiating documents, except for habeas corpus petitions and complaints in which he alleges that he is in imminent danger of serious physical harm.

4. Defendants' motion to seal hearing exhibits, Dkt. 35, is GRANTED. The clerk of court is directed to place Dkts. 36–44 under seal.

5. The clerk of court is directed to place under seal the transcript of the hearing on November 14, 2018.

Entered December 17, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge